56 CCPA

**NEUTROGENA CORPORATION,**
Appellant,

v.

**BRISTOL-MYERS COMPANY,**
Appellee.

**Patent Appeal No. 8174.**

United States Court of Customs and Patent Appeals.

May 22, 1969.

Donald A. Kaul, Washington, D. C., attorney of record, for appellant. Fulton

Brylawski, Arnold, Roylance, Kruger & Durkee, Washington, D. C., of counsel.

H. C. Dieserud, New York City, for appellee. Robert B. Whittredge, New York City, of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 153 USPQ 877, sustaining the opposition by appellee to appellant's application, serial No. 198,975, filed July 31, 1964, to register on the Principal Register the word-mark "Kera-Derm" for "medicated disks for use in the treatment of Acne, Blackheads and Scaley skin." Applicant's claimed date of first use was June 11, 1964.

Opposer-appellee relies on conceded prior use of the mark "THERADERM" and Reg. No. 663,684, of July 1, 1958 thereof for "Preparation for the Treatment of the Hair and Scalp." The parties stipulated the facts about opposer's business in lieu of taking testimony.

Bristol-Myers, appellee-opposer, sells a number of pharmaceutical and cosmetic preparations, the only one here pertinent being its "THERADERM," an over-the-counter, liquid preparation for the cure and prevention of dandruff. It acquired the goodwill of the business in this product and the mark in 1956 from Frank J. LiPuma, doing business in Chicago, Illinois, under the name Theraderm Laboratories. He adopted the "THERADERM" mark in 1948. Opposer's sales from 1956 to 1966 "largely exceeded $2,000,-000" and during that period opposer expended "well over $1,500,000 in advertising its product bearing the 'THERA-DERM' trademark" on a national basis in magazines and on television.

Applicant's goods, as shown by a specimen package filed with the application, consist of medicated discs sold with an applicator to which they are to be attached in use. The discs contain a soap in combination with medication and are mildly abrasive, designed to be rubbed against the affected areas of the skin after being moistened with water.

The board concluded:

The goods involved are closely related, albeit different in form, and would readily be assumed to originate with a single source if sold under the same or similar marks.

* * * we are persuaded that applicant's mark does so resemble the mark of opposer as to be likely, when applied to its goods, to cause confusion as to origin.

This appeal contests these conclusions. Appellant urges that the cumulative differences in the goods and the marks sufficiently assure that there will not be confusion, mistake, or deception under section 2(d) of the Trademark Act of 1946 (15 U.S.C. § 1052(d)), which is the controlling statute. At the same time, appellant frankly admits that "the products involved herein are probably each sold most commonly in drug stores," that the "class of purchasers of the products in the present case would be the average drug store shoppers who are used to examining and selecting products from shelves or racks," that these are nonprescription items, and that they are both for the treatment of the skin in one place or another.

Appellant says that all the differences in the marks and in the goods must be taken into consideration. We agree with that proposition. Having done so, it is our conclusion that the board did not err. We feel that it is reasonable to assume that a substantial portion of purchasers and prospective purchasers would likely be either confused as to the goods or as to their origin by reason of the similarities in the marks, which are self-evident and require no analysis.

It is argued, inter alia, that "Kera" and "Thera" have different suggestive meanings; that "Kera" is derived from "kerato—" and/or "keratogenous," both of which relate to horny skin tissues. We think only a small percentage of

people would know this. It is further argued that "Thera—" is obviously derived from "therapy" or "therapeutic," which relate to healing. We feel the same about this and, further, that even to those aware of that fact it would not spontaneously strike most observers that that is the reason for the use of "Thera—" in "THERADERM." People with acne and dandruff are of all classes, educationally speaking, and the refined analyses of which lawyers are capable in taking these marks apart and putting them together are not likely to occur to the great bulk of the people walking into self-service stores or asking salesclerks for products of which they may have but dim recollections from having previously seen or heard one or the other of the involved marks.

It is said that people looking for a liquid dandruff remedy are not likely to take or accept medicated discs. While we think there is a possibility of mistake and that they might get a product they did not in fact want—due to the similarity of the marks, especially in sound—even if we put that aside, there is still, in our opinion, a likelihood that the two different products would be thought to have a common source.

The decision of the board is affirmed.

Affirmed.